UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY BADON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1065** |
| **PREFERRED CAREGIVERS AND SITTERS, LLC ET AL.** | **SECTION "B"(5)** |

## OPINION

Before the Court is plaintiff Anthony Badon's motion to certify a class. Rec. Doc. 20. Defendants Preferred Caregivers and Sitters, LLC, Barry Wright, and Millicent Courseault Wright timely filed a response in opposition. Rec. Doc. 21. For the following reasons, the motion is **DENIED,** but subject to later reconsideration following focused discovery as discussed *infra.* *See Swales v. KLLM Transp. Servs.*, 985 F.3d 430 (5th Cir. 2021).

**FACTS AND PROCEDURAL HISTORY**

This case arises from defendant Preferred Caregivers and Sitters, LLC ("Preferred Caregivers), owned by defendants Barry Wright and Millicent Wright (collectively hereinafter "defendants") alleged practice of misclassifying employees ("potential plaintiff class") as independent contractors in order to deprive them of otherwise federally mandated overtime pay. *See generally* Rec. Doc. 1. Plaintiff, Anthony Badon ("Mr. Badon"), initially filed a Collective Action Complaint on March 31, 2020 setting forth the following alleged facts, which defendants dispute.

1

Mr. Badon alleges that he began working for defendants in 2019 to provide home health services for defendants' clients. *Id.* at 4. Throughout Mr. Badon's employment for defendants, the latter controlled his schedules, rates of pay, and job requirements. *Id.* All clients served by Mr. Badon through the scope of his employment contracted directly with defendants, not independently with Mr. Badon. *Id.* Despite routinely working for defendants in excess of 40 hours per week, including at times as many as 50-70 hours per week, Mr. Badon was not paid overtime. *Id.* at 5. Instead, defendants improperly classified Mr. Badon as an independent contractor, rather than an employee, in order to avoid incurring overtime costs. *Id.* Despite being classified as such, however, Mr. Badon was unable to retain his own clients and could only work for those contracted with defendant; defendants also provided the materials and equipment necessary for his job, controlled his schedule, assigned his clients, and controlled the how, when, and with whom Mr. Badon could work. *Id.* at 5.

Mr. Badon's complaint alleges a collective action claim for violation of federal overtime requirements pursuant to the Fair Labor Standards Act ("FLSA"). *Id.* at 5-6. Mr. Badon asserts that defendants' alleged practice of misclassification and underpayment employees affected others working for defendants as "independent

contractors." *Id.* at 4-5. Following defendants' initial answer,[1] Mr. Badon filed an amended and supplemental complaint on September 10, 2020, adding as plaintiffs Stacey Badon ("Ms. Badon") and Tamekia Johnson ("Johnson") (collectively hereinafter "plaintiffs"). Rec. Doc. 18 at 2. Plaintiffs' amended complaint also asserted an additional claim against defendants for retaliation. *Id.* at 1. Plaintiffs allege that, following the filing of Mr. Badon's original complaint, defendants "harass[ed] and retaliate[d]" against him by delaying his paycheck and terminating his employment. *Id.* at 8. Plaintiffs allege that, upon receipt of notice from Johnson on April 14, 2020 of her Notice of Consent to opt into this suit, defendants began delaying her paychecks and began the process of terminating her employment. *Id.* Plaintiffs further allege that, after Ms. Badon opted in and served notice upon defendants on May 7, 2020, her hourly rate of pay was reduced from $8.00 per hour to $7.50 per hour. *Id.*[2] On September 24, 2020, defendants filed an answer to plaintiffs' amended complaint. Rec. Doc. 19. On October 13, 2020, plaintiffs filed the instant motion

---

[1] *See* Rec. Doc. 7.
[2] Defendants deny, among other things, terminating Mr. Badon or delaying his payments, but rather allege that his only client was dismissed from the agency for inappropriate comments and behavior investigated by the state and that there are no appropriate clients at this time. Rec. Doc. 19 at 6. Defendants also deny terminating or delaying payments to Johnson, alleging that she has not maintained a reliable address but that defendants have "consistently worked" to ensure her timely payment. *Id.* at 7. Defendants also deny reducing Ms. Badon's pay, but rather assert the shift in pay affected all of defendants' workers amidst a "company-wide reorganization." *Id.*

to conditionally certify an FLSA collective action and facilitate notice under 29 U.S.C. § 216(b).[3]

**LAW AND DISCUSSION**

The FLSA allows employees to bring an action on behalf of themselves and those "similarly situated" who opt-in to the litigation in writing. *Farrow v. Ammari of Louisiana, Ltd.*, No. CV 15-7148, 2016 WL 3020901, at *2 (E.D. La. May 26, 2016). Section 16(b) of the FLSA provides for damages and defines the right of action for employees against their employers for violations of the overtime provisions of the Act. *Banegas v. Calmar Corp.*, No. CIV.A. 15-593, 2015 WL 4730734, at *3 (E.D. La. Aug. 10, 2015). "Certification of a FLSA collective action typically proceeds under a two-step process, sometimes referred to as the '*Lusardi* approach.'" *Id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). First, the district court determines whether the pleadings and affidavits warrant notice to putative class members under a lenient standard. *Mooney*, 54 F.3d at 1213-14 ("conditional certification"). Second, if notice is given and plaintiffs opt-in, the court conducts a post-discovery factual inquiry to determine whether the class members are similarly situated, usually following a defendant's motion for

---

[3] Plaintiffs rely on declarations and paystubs from Mr. Badon, Ms. Badon, and Johnson. *See* Rec. Docs. 20-2, 20-3, and 20-4 (declarations), and Rec. Docs. 20-5, 20-6, and 20-7 (pay stubs).

4

decertification. *Id.* at 1214. If the court determines otherwise, the class is decertified, the opt-in plaintiffs dismissed without prejudice, and the original plaintiffs proceed on their individual claims. *Id.*

Alternatively, some courts follow the so-called *Shushan* approach, equating the FLSA "similarly situated" inquiry with the Rule 23 class certification inquiry. *Mooney*, 54 F.32 at 1214 ("In other words, the court looks at 'numerosity,' 'commonality,' typicality' and 'adequacy of representation' to determine whether a class should be certified."). In *Banegas*, this Court noted that "*Lusardi* is the prevailing approach." *Banegas*, 2015 WL 4730734, at *3. Plaintiffs request notice and conditional certification of the FLSA Collective Class under the first step of *Lusardi*. Rec. Doc. 20-1 at 8. Defendants argue that plaintiffs do not qualify for notice or conditional certification under either *Lusardi* or *Shushan*. Rec. Doc. 21 at 4-5. Unfortunately, however, the parties arguments for the instant motion have recently been rejected or rendered moot by the United States Fifth Circuit Court of Appeals.

In *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit, for the first time, directly addressed and laid to rest the question of which standard applied: neither.[4] *Swales*, 985 F.3d at 437. "As for *Lusardi*, it is an

---

[4] *Lusardi* was rejected outright, while *Shushan's* rejection was classic *obiter dictum*.

abstract and ad-hoc 'balancing test with no fulcrum.' As for *Shushan*, it 'rests improperly on an analogy to Rule 23 lacking in support in [] the FLSA.'" *Id.* (internal citations omitted). Dismissing both as inadequate, the court articulated new principles to guide district courts, grounded in the "interpretive first principles" of the statute's text[5] and the Supreme Court's leading case on the matter.[6] *Id.* at 434.

> [A] district court must rigorously scrutinize the realm of "similarly situated" workers, and must do so from the outset of the case, not after a lenient, step-one "conditional certification." Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs. The bedrock rules, not *Lusardi*, define and delimit the district court's discretion.

*Id.*

While noting that the statute "doesn't define 'similarly situated,'" and "says nothing about 'certification' or 'notice,'" the court nevertheless explained that, "since written consent is required by statute, a court's notice-sending authority is 'inevitable' in cases involving numerous potential plaintiffs." *Id.* (quoting *Hoffmann La-Roche*, 493 U.S. at 171). However, it is "discretionary with the district court." *Id.* at 435. A district

---

[5] "[T]he FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective." *Id.* at 434 (citing 29 U.S.C. § 216(b)).
[6] "[T]he Supreme Court's admonition that while a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

6

court may oversee the collective action and sending of notice, but intervention "cannot devolve into 'the solicitation of claims.'" *Id.* at 436. (quoting *Hoffmann La-Roche*, 493 U.S. at 174). Thus, the district court must preserve judicial neutrality, and avoid giving off the appearance that the court has endorsed the underlying merits of the action. *Id.*

In *Swales*, the district court granted the plaintiffs' request under *Lusardi* to conditionally certify an FLSA class and send notice to the ostensibly improperly classified independent contractors of the defendant. *Id.* at 437-38. The district court noted that the putative class members all had independent contractor agreements, were all paid according to the number of miles driven, and all leased their trucks from the defendant. *Id.* at 438. The district court also acknowledged distinctions, such as different per-mile compensation rates and hours works. *Id.* The defendant argued that, because the independent contractors required application of the "economic-realities test,"[7] these differences would require a "highly individualized inquiry" not suitable for conditional certification. *Id.* The district court recognized these concerns but believed it premature to apply the economic-realities test because it concerned "a 'merits issue' to

---

[7] "To determine employee status under the FLSA, we focus on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he or she renders his or her services." *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 304 (5th Cir. 1998).

7

be dealt with after discovery was complete." *Id.* Thus, the court conditionally certified the collective class, but *sua sponte* certified its decision for interlocutory appeal, which the Fifth Circuit ultimately granted. *Id.* at 439.

The Fifth Circuit determined that *Lusardi* "frustrates, rather than facilitates, the notice process." *Id.* First, "the *Lusardi* test comes in many varieties," such that "the amorphous and ad-hoc test provides little help in guiding district courts in their notice-sending authority." *Id.* at 439-440. Second, *Lusardi* "distracts from the FLSA's text," which says nothing about conditional certification, and thus the statute cannot be read "as supporting any of the certification tests" that district courts have created or applied. *Id.* at 440.

Instead, the law requires that district courts ensure "that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Id.* However, district courts should not forego "potentially dispositive, threshold matters" just because they also concern the merits of the underlying claims. *Id.* at 441 ("The fact that a threshold question is intertwined with a merits question does not itself justify deferring those question until after notice is sent out."). Thus, because "a valid independent-contract classification bars application of the FLSA," it is "improper to ignore evidence

8

. . ., like whether the plaintiffs are 'employees' such that they can bring an FLSA claim." *Id.*

*Swales* thus rejected *Lusardi* and any "conditional certification" test, instead adopting a framework through which district courts are to vet potential class members before sending notice:

> [A] district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.

*Id.* Thus, in simple cases, "notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations" because "the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job." *Id.* at 441-42. In such a situation, "mountains of discovery" are unlikely necessary to determine the scope of appropriate notice. *Id.* at 441. However, in more complex cases "where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more" to determine who is similarly situated. *Id.* Considering "whether merits questions can be answered collectively

has nothing to do with endorsing the merits." *Id.* Instead, it "aids the district court in deciding whether notice is necessary." *Id.* Otherwise, the district court "is likely to send notice to employees who are not potential plaintiffs," and thereby "risks crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool." *Id.*

The threshold issue in *Swales* required application of the economic-realities test, which necessitates individual inquiries into the degree of control the employer exercised over each independent contractor. *Id.* "Thus, the district court needed to consider the evidence relating to this threshold question in order to determine whether the economic-realities test could be applied on a collective basis." *Id.* Although such evidence would also relate to the merits, "the district court need not ignore that evidence to avoid using it for the wrong purpose." *Id.* at 443.

> After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be "similarly situated" for purposes of answering whether they are in fact employees, or at least that Plaintiffs have not met their burden of establishing similarity. If that is the case, it may decide the case cannot proceed on a collective basis. The district court may instead decide that it need further discovery to make this determination. Or it may find that only certain subcategories of [putative class members], depending on their economic dependence on [their employer], should receive notice.

10

*Id.* But regardless, "the FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation." *Id.*

As noted, plaintiffs have motioned for conditional class certification under *Lusardi*, and defendants have objected utilizing that same framework. However, the Fifth Circuit has since reprobated *Lusardi* and reproached the entire concept of conditional certification. Thus, the basis for plaintiffs' motion for "conditional" certification is rejected.

Therefore, no later than **20 days from entry of this order**, plaintiffs and defendants shall jointly meet to discuss the scope of discovery necessary to determine which putative class members are sufficiently "similarly situated" to justify notice. Within **7 days after concluding those discussions**, parties shall jointly submit a report with a proposed discovery and deposition schedule for the purpose of answering whether named and potential opt-in parties are too divisive a group to be "similarly situated", along with a briefing schedule to hear a contemplated motion for class certification. Thereafter, the Court will convene a status conference via video conference with parties' counsel.

New Orleans, Louisiana this 3rd day of August, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE